## THORNE v. FOLEY.

1. LIMITATION OF ACTIONS—EXPRESS TRUST.
   Limitations do not run in favor of the trustee of an express trust except where he repudiates the trust, and assumes an adverse position with notice to the cestui que trust.

2. TRUSTS—ENFORCEMENT—REPUDIATION—LACHES.
   A bill on behalf of certain cestuis que trust, against defendant as the alleged trustee, alleged that year by year the original trustee and his successors in office represented to such cestuis que trust and their heirs and representatives, both expressly and by implication, that the title to the property was vested in such trustee and his successors by virtue of the statute of limitations; and that a certain decree quieting such title was a final adjudication and determination of all the rights of such cestuis que trust, their heirs and representatives, and was an absolute bar to any proceedings by them or for their benefit to recover the premises. The bill also set up the recent discovery of a certain ancient deed to defendants, which was unrecorded, but which, if recorded, would only have shown that defendants held subject to a different trust than that claimed by complainants, and adverse to them. *Held* that a delay of more than 45 years by complainants in bringing suit was such laches as deprived them of relief.

Appeal from Wayne; Rohnert, J. Submitted June 10, 1904. (Docket No. 13.) Decided October 4, 1904.

Bill by Charles Thorne and others against John S. Foley and others to enforce a trust. From a decree sustaining a demurrer to the bill, complainants appeal. Affirmed.

*Jasper C. Gates* (*Louis J. Rosenberg*, of counsel), for complainants.

*Keena & Lightner*, for defendant Foley.

MONTGOMERY, J. This case is before us on appeal from a decree passed in favor of the defendants on a hearing on

demurrer to the bill of complaint. The bill is essentially a bill to declare and enforce a trust. The complainants' case is grounded upon a deed of the premises in question, known as the "Melchers Farm," made in April, 1808, by Francis Paul Melchers to Louis Beaufait, Joseph Cerre dit St. Jean, Benoit Chapaton, Charles Rivard, and Francis Rivard, acting as attorneys for the inhabitants of the Cote N. E. in the district of Detroit. The bill sets out at length · the terms of this deed, which it is claimed were apt to create a trust in favor of the inhabitants of the Cote N. E. It is also averred that the complainants are descendants of the then inhabitants of the Cote N. E., and have succeeded to their rights, and that in this right they are entitled to have this trust enforced in their favor.

The bill also avers that in April, 1833, Louis Beaufait and Francis Rivard, being then the only survivors of the trustees named in the Melchers deed of 1808, made a conveyance of the farm to Rev. Frederick Rese, then the archbishop of the diocese of Cincinnati, and to his heirs and assigns, but in trust for religious and literary purposes. This last-mentioned deed was not recorded until August, 1901. The bill also alleges that at a date prior to 1857 Jacob M. Howard, Addison Mandell, William P. Wesson, and others associated together and obtained deeds of conveyance from certain of the inhabitants of the Cote N. E. other than the ancestors of the complainants.

The bill further alleges that in 1857 Peter Paul Le Fevre, then exercising the office of bishop of the Roman Catholic Diocese of Detroit, filed a bill of complaint in the Wayne circuit court, in chancery, against William P. Moore, in whom had been vested the Howard and Mandell title, praying, among other things, that the court decree that a full and absolute fee of said premises was vested in and held by said Peter Paul Le Fevre in trust for the use and benefit of said Roman Catholic Church, free and clear of all claim of right thereto on the part of said Moore. In this suit James Abbott, Victor Moross, and Louis L. Beaufait were joined as defendants. The bill averred that the inhabitants of

the Cote N. E. were so numerous that it would be impracticable to make them parties.

The present bill avers that this latter allegation was untrue, and that the whole proceeding in 1857 was collusive and fraudulent, and that the decree was taken under an agreement that the farm should be divided between the bishop and the Howard and Mandell syndicate, which was in fact done after the decree was entered. The decree was entered in accordance with the prayer of the bill, and the bishop has since used and controlled the property.

The circuit judge was of the opinion that, if the rights of complainants under the original Melchers deed be assumed to have been as stated, those rights have been cut off by the statute of limitations and by complainants' laches. Our first inquiry should be directed to this question.

The claim of the complainants is that the Melchers deed created an express trust, and that the statute of limitations does not run as against a cestui que trust and in favor of the trustee of an express trust. Such unquestionably is the general rule. 2 Perry on Trusts, § 863. But it is equally well settled that, where the trustee repudiates the trust, and assumes an adverse position with notice to the cestui que trust, an action to recover land is barred. Id.; Wood on Limitations, § 200, p. 464; *Speidel* v. *Henrici*, 120 U. S. 377 (7 Sup. Ct. 610); *Naddo* v. *Bardon*, 51 Fed. 493, 2 C. C. A. 335.

The bill in this case alleges:

"And also that year by year, and every year since the making of said decree, either said Bishop Le'Fevre, or some of his successors in office, did by themselves and by and through the several and various priests who have from time to time been in charge of and who have officiated in the said churches, stated and represented to said persons, said 'inhabitants' and their heirs and representatives, both expressly and by implication, that it was under and by virtue of the statute of limitations of this State that the legal title to said ' farm' was vested in said Bishop Le Fevre and his said successors; and, further, that said decree was a final adjudication and determination of all

the rights of said 'inhabitants' and their heirs and representatives in and to said 'farm,' and an absolute bar to any and all suits and proceedings by them or on their behalf in the premises."

This averment imparts knowledge of the decree, and that the defendants were claiming title adverse to the claim of complainants. But it is said that, had the deed of 1833 been recorded, it would have disclosed that the defendants took the farm subject to the trust declared by the deed of 1808, and that the concealment of this deed and of the agreement between Howard and Mandell and Bishop Le Fevre prevents the bar of the statute. Had the deed of 1833 been recorded, it would have disclosed to the complainants that defendants were claiming to hold the land in question by virtue of a deed declaring a trust other and different from that which the complainants claim — a trust adverse to complainants. This claim of defendants, at least so far as it was based upon the decree of 1857, was well known to complainants. It is said that, if this deed had been recorded, it would have disclosed that Bishop Rese took the title of the trustees subject to the burdens of complainants' rights. How else could the bishop have taken the title? The bill is particular in averments to show that no adverse possession existed prior to 1857. Complainants did not require a view of the deed of 1833 to assure them of their rights under the Melchers deed. The utmost that can be claimed is that the defendants made broader claims as to their rights than the law would sustain them in, but all the time complainants were in possession of knowledge of the *facts* affecting their title, and since 1857 knew that that title was disputed. This delay of more than 45 years bars their remedy.

The decree is affirmed, with costs.

The other Justices concurred.